**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARGARETTA SIBERT-DEAN,

Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,

Defendant / Third-Party Plaintiff

v.

NORMA JEAN WOODSON

Third-Party Defendant.

Civil Action No. 08-2145 (BAH)
Judge Beryl A. Howell

**MEMORANDUM OPINION**

Following an eight-day jury trial, defendant Washington Metropolitan Area Transit Authority ("WMATA") was found liable for the injuries plaintiff Margaretta Sibert-Dean sustained after the WMATA bus on which she was a passenger collided with another vehicle. WMATA now seeks a new trial, pursuant to Federal Rule of Civil Procedure 59, arguing that the Court erred when it instructed the jury in accordance with the jury instructions that WMATA submitted to the Court and initially requested the Court to use. Specifically, the Court instructed the jury that a violation of any of the seven traffic regulations applicable in this case would constitute negligence *per se*. In its instant motion, WMATA complains that two of the seven regulations should not have been included in the negligence *per se* instruction. According to WMATA, these two regulations – 18 DCMR § 2213.4 and § 2206.1 – merely reiterate the duty of care established by the common law and consequently are not sufficiently specific to support a negligence *per se* instruction. This argument is different from the various positions WMATA

previously asserted both before and during trial, when, after requesting a negligence *per se* instruction, WMATA argued that negligence *per se* was not applicable for violation of *any* traffic regulation. WMATA now apparently concedes that a negligence *per se* instruction is appropriate for certain traffic regulations, just not the two regulations singled out in this motion. As explained below, WMATA's new challenge to the negligence *per se* instruction given to the jury at the trial of this matter is unavailing. Accordingly, WMATA's motion for new trial is denied.

## I. BACKGROUND

On February 14, 2006, a WMATA bus traveling southbound on Georgia Avenue in Northwest Washington, D.C. collided with a vehicle driven by Norma Jean Woodson. Trial Tr. (Rough), Sept. 22, 2011 AM, at 8-11.[1] The collision occurred when Ms. Woodson, who was driving northbound on Georgia Avenue, made a left turn in front of the bus in order to enter a grocery store parking lot. Trial Tr. (Rough), Sept. 27, 2011, at 94. Plaintiff Margaretta Sibert-Dean was a passenger on the WMATA bus at the time of the accident, and sustained trauma to her shoulder and neck area as a result of the accident that caused her to suffer orthopedic and neurologic injuries. Trial Tr. (Rough), Sept. 22, 2011 AM, at 77-85; Trial Tr. (Rough), Sept. 23, 2011 (testimony of Dr. Edwin Fulton); Trial Tr. (Rough), Sept. 26, 2011 (testimony of Dr. Kenneth Murray).

On November 1, 2008, the plaintiff filed a Complaint against WMATA, asserting negligence on the part of the WMATA bus driver and seeking compensation for the injuries she sustained.[2] Notice of Removal, ECF No. 1, Ex. 1, D.C. Superior Court Compl. On December

[1] The parties have not requested formal transcripts of the trial from the court reporters. Accordingly, the Court's citations to the trial transcripts are from the court reporters' rough draft of the proceedings.

[2] The plaintiff originally filed this case in Superior Court. The defendant removed the action to federal court on

18, 2008, WMATA filed a third-party Complaint against Ms. Woodson ("third-party defendant Woodson").[3] ECF No. 4.

In advance of trial, on August 15, 2011, the parties filed a joint pretrial statement setting forth, *inter alia*, the claims and defenses they would assert before the jury, as well as proposed jury instructions. Joint Pretrial Statement ("JPS"), ECF No. 54. WMATA summarized its defenses that its employee bus driver was not negligent and "paid full time and attention to the operation of the WMATA bus, and . . . complied fully with all District of Columbia Traffic Regulations then and there in force and effect." *Id.* at 2. WMATA also made clear its claim that third-party defendant Woodson's negligence caused the accident and that she "violated . . . DC [sic] Traffic Regulations in the operation of her vehicle and that the violation of these regulations constitutes negligence per se and/or evidence of negligence." *Id.* at 3. WMATA cited eight regulations, including "18 DCMR []§2213.4 (Failure to Pay Full Time and Attention)," which is at issue in this motion, as traffic regulations that would constitute negligence *per se* if violated.[4] *Id.*

As required by the Court's order, Supplemental Standing Order, ECF No. 53, May 25, 2011, at ¶ 1(b)(ii), WMATA also supplied as part of the JPS, the text of proposed jury

---

December 10, 2008, pursuant to 28 U.S.C. § 1441 and the WMATA Compact, D.C. CODE § 9-1107.01, which states that "[t]he United States district courts shall have original jurisdiction . . . of all actions brought by or against [WMATA]." *See also Barksdale v. Washington Metro. Area Transit Auth.*, 512 F.3d 713, 714 (D.C. Cir. 2008).

[3] Prior to the filing of the Complaint, the plaintiff settled her claims against third-party defendant Woodson through Ms. Woodson's insurance carrier, Allstate Insurance Company, in exchange for $18,000. Third-Party Def. Woodson Mot. Summ. J., ECF No. 48, ¶¶ 3-4. Consequently, third-party defendant Woodson is not exposed to any further monetary liability in this matter. The jury finding of negligence liability against her entitles WMATA to contribution and a *pro rata* credit for the liability WMATA faces. *See* Mem. Op. denying Third-Party Defendant Woodson's Mot. Summ. J., ECF No. 51, at 6 (Urbina, J.).

[4] The other seven regulations cited by WMATA as constituting negligence *per se* when violated are: 18 DCMR §§ 2201.7 (Proper Use of the Roadway); 2205.1 (Proper Signals For Turning and Stopping); 2204.2, 2204.3 and 2204.4 (Turning Requirements and Restrictions); 2207.3 and 2207.4 (Right of Way Between Intersections). JPS, ECF No. 54, Ex. 3, "Proposed Jury Instructions Prepared by Defendant WMATA – Includes Proposed Instructions By Plaintiff and Defendant Woodson," at 34-42.

instructions. WMATA's proposed jury instructions included a negligence *per se* instruction based upon D.C. Standardized Civil Jury Instruction § 5.09 and modified with the text of eight traffic regulations, violation of which would trigger the finding of negligence.[5] JPS, ECF No. 54, Ex. 3, "Proposed Jury Instructions Prepared by Defendant WMATA – Includes Proposed Instructions By Plaintiff and Defendant Woodson," at 34-42. The plaintiff and third-party defendant Woodson joined in this request. *Id*. The traffic regulations that WMATA requested the Court to read to the jury included 18 DCMR § 2213.4, which provides that "[a]n operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle." *Id.* at 34. In addition to the eight traffic regulations requested by WMATA, the plaintiff requested inclusion of 18 DCMR § 2206.1, which provides that "[n]o person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety." JPS, ECF No. 54, Ex. 2, Pl.'s Proposed Jury Instructions, at 26.

In order to clarify portions of the JPS, including any objections among the parties to proposed jury instructions, the Court directed the parties submit a supplemental joint pretrial statement that included "a joint agreed upon list of proposed jury instructions." Minute Order dated Aug. 25, 2011 (Howell, J.). In the Supplement to the JPS, all three parties jointly requested that the Court give "Civil Jury Instructions for DC § 5.09 – (Plaintiff request pattern only; WMATA requests modified only)." Supplement to the JPS, ECF No. 57, at 11. No party requested the negligence instruction at D.C. Standardized Civil Jury Instruction § 5.10. *Id.*

At the initial charging conference held on September 27, in the middle of trial, the Court raised the issue of whether the negligence *per se* jury instruction, D.C. Standardized Civil Jury

[5] WMATA also included in its proposed jury instructions D.C. Standardized Civil Jury Instruction § 5.10, Evidence of Negligence, which instructs the jury, in relevant part, that if it finds a regulation to have been violated that it "may consider that violation as evidence that the [defendant] was negligent. However, that violation by itself does not necessarily mean that the [defendant] was negligent." JPS, ECF No. 54, Ex. 3, "Proposed Jury Instructions Prepared by Defendant WMATA – Includes Proposed Instructions By Plaintiff and Defendant Woodson," at 43.

Instruction § 5.09, as opposed the "evidence of negligence" instruction, D.C. Standardized Civil Jury Instruction § 5.10, was appropriate, considering that WMATA had listed both instructions in its initial proposed jury instructions filed with the JPS. Trial Tr. (Rough), Sept. 27, 2011, at 137-39. The Court revisited this issue at a charging conference held on September 28, and concluded that the negligence *per se* jury instruction that all three parties had initially requested in the JPS and jointly listed as agreed-to in the supplemental JPS, was appropriate. Trial Tr. (Rough), Sept. 28, 2011 AM pt. 2, at 3-4. WMATA raised no objection to the inclusion of the negligence *per se* jury instruction. *Id*. Rather, WMATA reiterated its request to include in the negligence *per se* instruction 18 DCMR § 2201.7, as it had originally requested in the JPS, and urged the Court to consider including an additional traffic regulation, 18 DCMR § 2201.9, which had not previously been mentioned either in the JPS, Supplemental JPS or orally in discussions concerning the jury instructions. *Id.* at 4-5. The Court sustained the objection by third-party defendant Woodson and the plaintiff to inclusion of 18 DCMR § 2201.7 in the instructions, finding that regulation inapplicable to the street configuration at issue in the case.[6] *Id.* at 3-4. Both the plaintiff and third-party defendant Woodson objected to WMATA's new request to include 18 DCMR § 2201.9. *Id.* The Court sustained the objection following review of the requested traffic regulation and finding it inapplicable to the facts presented in the case.[7] *Id*. at

[6] 18 DCMR § 2201.7 states: "Whenever any highway has been divided into two (2) or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway, unless directed or permitted to use another roadway by official traffic control devices or police officer." WMATA argued that this regulation barred a left turn across double yellow lines and was therefore violated by third party defendant Woodson. Trial Tr. (Rough), September 27, at 140, and 28, AM, pt 2. The Court explained during the charging conference that while no caselaw from the District of Columbia interpreted this statute, the Court had examined authority from other jurisdictions with closely analogous traffic regulations that held the regulation simply did not apply to vehicles turning across double yellow lines. Trial Tr. (Rough), Sept. 28, 2011 AM, pt. 2; *see Vail-Beserini v. Rosengarten*, 267 A.D.2d 812 (N.Y. App. Div. 1999); *Carroll v. Conrad*, 30 A.D.2d 744 (N.Y. App. Div. 1968).

[7] Following the Court's ruling that 18 DCMR § 2201.7 was not applicable in this case, WMATA's counsel, Ms. Carey, urged the Court to include 18 DCMR § 2201.9, which prompted the following discussion with the Court:

4-5.

Later the same day, shortly before the jury was instructed, WMATA raised an objection to the negligence *per se* jury instruction, arguing that negligence *per se* was not applicable to *any* traffic regulation and citing in support of this position *Bowman v. Redding & Co.*, 449 F.2d 956 (D.C. Cir. 1976). Trial Tr. (Rough), Sept. 28, 2011 PM, at 1 (WMATA Counsel, Ms. Carey: "I'm concerned with the negligence per se, instruction . . . . My concern is that the traffic regulations are generally not the type of regulation which a violation creates negligence per se . . ."). The Court declined to rely on this case and overruled the objection.[8] *Id.* at 10-11.

During trial, the jury heard evidence that prior to the accident, the WMATA bus was stopped on the 3800 block of Georgia Ave. N.W. to pick up and drop off passengers. Trial Tr. (Rough), Sept. 27, 2011, at 51-54 (testimony of Dante Dinkins); *see also* Trial Tr. (Rough), Sept.

---

> THE COURT: Can I see this regulation? And the number was 2201.9?
> MS. CAREY: Yes.
> THE COURT: And Ms. Carey you believe that 2201.9 precludes turning left across double yellow lines?
> MS. CAREY: Yes.

Trial Tr. (Rough), Sept. 28, 2011 PM, at 4-5. Specifically, this regulation states: "The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the roadway." Since the regulation is silent on whether a turn that crosses double yellow lines is prohibited, the jury was not instructed on this regulation. It should be noted, however, that at the September 28 charging conference WMATA sought inclusion of 18 DCMR § 2201.9 in the negligence *per se* jury instruction despite the fact that, similar to the regulations now challenged by WMATA in its motion for new trial, it directs a driver to conform his or her conduct to a reasonableness standard.

[8] In overruling WMATA's eleventh-hour objection to the very jury instruction that it itself requested, the Court explained:

> [The traffic regulations applicable in the case] are specific regulations enacted to protect the safety of passengers and others on the roadway. The plaintiff is clearly within that class of people for whom the traffic regulations were designed to protect. The defendants, WMATA, and Ms. Woodson, have presented disputed factual issues about whether or not they violated the traffic violations or not, but that's a factual dispute. It's up to the jury to decide. And under [*Burns v. Washington Metropolitan Area Transit Authority*, 114 F.3d 219 (D.C. Cir. 1997)] . . . the magistrate judge that tried that case assumed on herself to decide and not give the negligence *per se* instruction and got reversed []. And so I am going to . . . give this instruction . . . . [I]f there was a debate about this very significant issue, [the defendants] should have brought it up much earlier than now, particularly since I was relying on both WMATA's proposed jury instructions and the plaintiff's jury instructions.

Trial Tr. (Rough), Sept. 28, 2011 PM, at 10-11.

21, 2011 PM, at 13. At this stop, the WMATA bus driver, Dante Dinkins, was distracted by attractive women in the vicinity and failed to assess traffic conditions prior to accelerating from his stopped position. Trial Tr. (Rough), Sept. 22, 2011 AM, at 9-16 (testimony of Patricia Shelton); *id.* at 71 (testimony of plaintiff Margaretta Sibert-Dean). Witnesses stated that had the bus driver looked before moving, he would have noticed that third-party defendant Woodson's car was turning immediately in front of the bus. *Id.* at 29-32 (testimony of Patricia Shelton); *id.* at 74-75 (testimony of plaintiff Margaretta Sibert-Dean). Also presented at trial was evidence that third-party defendant Woodson observed that the WMATA bus was moving, or would soon move, and that she nonetheless attempted to cross traffic into the grocery store parking lot before it was safe to do so. Trial Tr. (Rough), Sept. 27, 2011, at 109-112 (testimony of Michael Cooper). On September 30, 2011, the jury returned a verdict against WMATA and third-party defendant Woodson, concluding that both defendants' negligence proximately caused the accident.[9] Verdict Sheet, ECF Nos. 67-68. The jury awarded the plaintiff $675,000.00 for her injuries. *Id.*

On October 7, 2011, WMATA filed the instant motion for a new trial. ECF No. 70. WMATA contends that the Court erred when it included traffic regulations 18 DCMR §§ 2213.4

[9] The jury provided the following answers to the questions posed on the Verdict Sheet:

> "**QUESTION 1:** Do you find that the Plaintiff has proven, by a preponderance of the evidence, that the Washington Metropolitan Area Transit Authority, through its employee, was negligent, and that its negligence was a cause of the accident of February 14, 2006? **YES.**
>
> **QUESTION 2:** Do you find that the Washington Metropolitan Area Transit Authority has proven, by a preponderance of the evidence, that third-party defendant Norma Jean Woodson was negligent, and that her negligence was a cause of the accident of February 14, 2006? **YES.**
>
> **QUESTION 3:** Do you find that the Plaintiff has proven, by a preponderance of the evidence, that she was injured as a proximate result of the accident of February 14, 2006? **YES.**
>
> **QUESTION 4**: What amount, if any, do you award the plaintiff for her compensatory damages? **$675,000.**"

Verdict Sheet, ECF Nos. 67-68 (instructions omitted).

and 2206.1 among the seven traffic regulations in the Court's negligence *per se* instruction. Traffic regulation § 2213.4, "Obstruction of Driver's View or Driving Mechanism: Improper Riding," provides that "[a]n operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle." Regulation § 2206.1, "Starting, Stopping and Backing," states that "[n]o person shall start a vehicle which is stopped, standing, or parked unless and until the movement can be made with reasonable safety." Although WMATA argued on September 28 that negligence *per se* is not applicable to any traffic regulations, in its motion for new trial WMATA raises a different argument, asserting that inclusion of only these two traffic regulations, of the seven provided to the jury, was improper. As explained below, however, this argument is without merit. Accordingly, WMATA's motion for new trial is denied.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). In evaluating a motion for new trial, the court must "be mindful of the jury's special function in our legal system and hesitate to disturb its finding." *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 6 (D.D.C. 2007) (citation omitted). To preserve the function of the jury, new trials should not be granted unless "the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *In re Lorazepam & Clorazepate Antitrust Litig*., 467 F. Supp. 2d 74, 87 (D.D.C. 2006). "Generally, a new trial may only be granted when a manifest error of law or fact is presented." *Id*. In a motion for a new trial challenging a jury instruction, "[t]he harmless error rule applies; to warrant reversal, the error must have been prejudicial: It must have affected the outcome of the district court

proceedings." *Czekalski v. Lahood*, 589 F.3d 449, 453 (D.C. Cir. 2009) (quotation omitted). "Jury instructions are proper if, when viewed as a whole, they fairly present the applicable legal principles and standards." *Id*. (quotation omitted). The decision to grant or deny a motion for new trial "lies within the sound discretion of the court." *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 85 (D.D.C. 2011) (quotation omitted).

## III. DISCUSSION

WMATA raises a single issue in its motion for new trial: that the Court erred when it instructed the jury that unexplained violations of two traffic regulations, 18 DCMR §§ 2213.4 and 2206.1, would constitute negligence *per se* as part of D.C. Standardized Civil Jury Instruction § 5.09.[10] Notably, the defendant does not claim any error in instructing the jury that violation of five other traffic regulations constituted negligence *per se*. Rather, WMATA contends that only these two regulations, out of the seven provided to the jury, are inappropriate for a negligence *per se* instruction because these regulations do not establish specific guidelines governing the defendant's actions, but merely reiterate the duty of care established by the common law. This argument was not raised before the Court in the JPS, in which WMATA requested that the negligence *per se* instruction be given with § 2213.4, in the supplement to the JPS, in which WMATA joined with the other parties in requesting the negligence *per se* rather than the mere negligence instruction, or during the pretrial conference or the final charging

[10] When instructing the jury, the Court stated in pertinent part:

> At the time the accident under consideration in this trial occurred, the following regulations were in effect in the District of Columbia. These regulations establish the applicable standard of care. You should measure the defendant's conduct by these standards. If you find that WMATA has violated any of these regulations then you must find this defendant negligent. If you find that the Third Party Defendant Norma Jean Woodson violated any of these regulations, then you must find her negligent. D.C. Municipal Regulation 2213.4: An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle. Regulation 2206.1: No person shall start a vehicle which is stopped, standing or parked unless and until the movement can be made with reasonable safety . . . ."

Trial Tr. (Rough), Sept. 28, 2011 PM, at 34-35.

conference. The argument will not now support a new trial.

**A. Negligence *Per Se* and Traffic Regulations**

As a preliminary matter, the Court notes that unexplained violations of traffic regulations may constitute negligence *per se* in the District of Columbia. This Court recently rejected WMATA's contention in *Mahnke v. Washington Metropolitan Area Transit Authority*, No. 10-cv-21, 2011 WL 5006914 (D.D.C. Oct. 20, 2011), that negligence *per se* does not apply to statutes governing vehicular traffic. As explained in *Mahnke*, "D.C. courts have repeatedly held that 'the unexplained violation of a traffic regulation enacted . . . to . . . prevent the type of accident that occurred constitutes negligence *per se.*'" *Id.* at *7 (quoting *Burns v. Washington Metro. Area Transit Auth.*, 114 F.3d 219, 223 (D.C. Cir. 1997)); *see also Stevens v. Hall*, 391 A.2d 792, 796 n.2 (D.C. 1978) ("Our Court of Appeals has consistently held in personal injury cases involving vehicles that if an applicable traffic regulation is violated negligence has been established as a matter of law, thus leaving only the question of proximate cause to be decided," quoting *Herrell v. Pimsler*, 307 F.Supp. 1166, 1168 (D.D.C. 1969)); *Bauman v. Sragow,* 308 A.2d 243, 244 (D.C. 1973) (per curiam) ("Violation of traffic regulations may, of course, constitute negligence per se."); *Herrell,* 307 F.Supp. at 1168 ("It is firmly established in this jurisdiction that violation of traffic regulations designed to promote safety is negligence as a matter of law where actions of adults are involved."); *Abel v. First Sec. Ins. Co. of Am.*, 120 A.2d 586, 587 (D.C. App. 1956) ("[A]lthough violation of traffic regulations may be negligence per se, it is still a question of fact whether or not the regulations were actually violated, and if so whether their violation was the proximate cause of the collision.").

In *Burns v. Washington Metropolitan Area Transit Authority*, 114 F.3d 219 (D.C. Cir. 1997), for example, the D.C. Circuit ordered a new trial after concluding that the magistrate

judge, who presided over trial, erred in failing to instruct the jury that the defendant's violation of the applicable traffic speed regulations was negligence *per se* and not merely "evidence of negligence." *Id.* at 223. The court stated that "[i]n the District of Columbia, the 'unexplained' violation of a traffic regulation enacted . . . to . . . prevent the type of accident that occurred constitutes negligence per se." *Id.* (internal quotation omitted). By contrast to its position at the charging conference on September 28, 2011, when WMATA argued that negligence *per se* does not apply to traffic regulations, WMATA now objects only to the inclusion of two, out of seven, traffic regulations in the negligence *per se* instruction.

### B. A Negligence *Per Se* Instruction is Applicable to D.C. Traffic Regulations 18 DCMR §§ 2213.4 and 2206.1

WMATA contends that "traffic regulations in general are less susceptible to a negligence *per se* analysis because they inherently reflect the common law standards for negligence." WMATA Reply Mot. New Trial, ECF No. 74, at 2. Specifically, WMATA argues that the negligence *per se* jury instruction, D.C. Standardized Civil Jury Instruction § 5.09, "is limited in scope and should not be given unless the applicable statute or regulation mandates specific guidelines governing a defendant's actions." Mem. Supp. WMATA Mot. New Trial ("WMATA Mem."), ECF No. 70, at 3. Thus, according to WMATA, the instruction is not appropriate where a regulation "merely addresses general principles which mirror the common law standards for a negligence action." *Id.*

WMATA is correct that in general "a statute or regulation offered to establish a standard for negligence *per se* purposes must not merely repeat the common law duty of reasonable care, but must set forth 'specific guidelines to govern behavior.'" *McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996) (quoting *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558 (D.C. Cir. 1993)); *Chadbourne v. Kappaz*, 779 A.2d 293, 296 (D.C. 2001) (same). The

regulations objected to in this case, however, are appropriate for a negligence *per se* instruction.

*1. The Authority Cited by WMATA is Not Relevant to Traffic Regulations*

WMATA asserts that "traffic regulations that only serve 'to clarify and define the elements of due care' are not the type of regulations which can support a negligence *per se* instruction." WMATA Mem., ECF No. 70, at 5. None of the cases WMATA relies on in support of this position, however, involve traffic regulations or even traffic accidents. WMATA cites to *Chadbourne v. Kappaz*, 779 A.2d 293 (D.C. 2001), but that case involved application of negligence *per se* to D.C.'s animal leash laws. *McNeil Pharmaceutical v. Hawkins*, 686 A.2d 567 (D.C. 1996), another case relied upon by WMATA, involved a products liability action against a pharmaceutical company; *District of Columbia v. Mitchell*, 533 A.2d 629 (D.C. 1987), was a case involving regulations pertaining to the D.C. Department of Corrections; and *Joy v. Bell Helicopter Textron, Inc*., 999 F.2d 549 (D.C. Cir. 1993), involved application of Federal Aviation regulations. *See also Thoma v. Kettler Bros., Inc.*, 632 A.2d 725, 728-29 n.8 (D.C. 1993) (construction site standards); *Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 674 (D.C. 1983) (building codes).

WMATA's reliance on *Bowman v. Redding & Co.*, 449 F.2d 956 (D.C. Cir. 1971) is similarly misplaced. In *Bowman*, the estate of a deceased construction worker brought a wrongful death action against his employer, alleging that the defendant violated workplace safety regulations at a construction site. The district court directed verdict for the defendant on grounds that the plaintiff was contributorily negligent, and thus barred from recovery. On appeal, the D.C. Circuit held that a contributory negligence defense was available to the defendant even if it violated safety regulations, but remanded the case because disputed issues of fact warranted a trial. In its discussion of contributory negligence and workplace safety regulations, the court

commented in *dicta*:

> In the ordinary negligence case involving automobiles, the legislative policy underlying traffic and kindred regulations is discernible as one that is intended to clarify and define the elements of due care. But such regulations are not intended to affect legal doctrines holding that a vehicle operator guilty of negligence-whether ascertained by a jury applying the broad common law standard or by a particular legislative standard-is not liable to an individual whose own negligence materially contributed to his injury. In such cases the defense of contributory negligence stands unaffected.

*Id.* at 966.

In its previous effort to avoid a negligence *per se* instruction altogether, WMATA urged the Court during the September 28 charging conference to spurn the clear holding in *Burns* that violation of traffic regulations constitutes negligence *per se* based on this *dicta* in *Bowman*. WMATA now relies on the same *dicta* in *Bowman* to argue that two of the charged traffic regulations cannot support a negligence *per se* instruction. This argument carries no more weight now than WMATA's previous argument. First, *Bowman*'s reference to traffic regulations was in the context of a discussion about the availability of a contributory negligence defense for a defendant who violated applicable regulations, and did not pertain to the scope of negligence *per se.* Second, even in this *dicta*, the Court in *Bowman* recognized that negligence by a "vehicle operator" could be established "by a jury applying . . . a particular legislative standard." *Id.* In this respect, the *dicta* in *Bowman* is fully consistent with the more recent and clear holding in *Burns* that "the 'unexplained' violation of a traffic regulation enacted to prevent the type of accident that occurred constitutes negligence per se." *Burns,* 114 F.3d at 223.

2. *Traffic Regulations 18 DCMR §§ 2213.4 and 2206.1 Warrant a Negligence Per Se Instruction*

Contrary to WMATA's contention, 18 DCMR §§ 2213.4 and 2206.1 prescribe a sufficiently specific standard of care for vehicle operators to warrant a negligence *per se* instruction. Traffic Regulation 2213.4 states that "[a]n operator shall, when operating a vehicle,

give full time and attention to the operation of the vehicle." This regulation does more than simply require a driver to pay attention, but demands "full attention," which, as the plaintiff notes, requires a driver to "not be distracted, and not be engaging in other activities while driving (certainly a problem in these days of multitasking and technology)."[11] Pl.'s Opp'n Mot. New Trial, ECF No. 73, at 8.

Similarly, 18 DCMR § 2206.1 also sets forth a specific standard of conduct. The regulation states that "[n]o person shall start a vehicle which is stopped, standing or parked unless and until the movement can be made with reasonable safety." The plaintiff correctly observes that Regulation 2206.1 "specifically applies to beginning to move your vehicle before it is safe to do so. It speaks to a driver understanding his/her surroundings and checking to make sure everything is safe before starting." Pl.'s Opp'n Mot. New Trial, ECF No. 73, at 8.

Indeed, the two challenged regulations are just as specific as the other five traffic regulations that WMATA concedes were properly incorporated into the Court's negligence *per se* jury instruction. In addition to challenged regulations §§ 2213.4 and 2206.1, for example, the Court instructed the jury that violation of 18 DCMR § 2204.2 would constitute negligence *per se*. The latter regulation provides that "[n]o person shall turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with *reasonable* safety" (emphasis added). Like 18 DCMR § 2206.1, this regulation also prescribes *reasonable* conduct.[12] WMATA provides no

---

[11] As further support for the point that 18 DCMR § 2213.4 sets forth specific guidance, the plaintiff notes that in *Washington v. A & H Garcias Trash Hauling Co.*, 584 A.2d 544, 547 (D.C. 1990), the court found a bicyclist contributorily negligent as a matter of law for failing to adhere to the regulation. Pl.'s Opp'n Mot. New Trial, ECF No. 73, at 7.

[12] The Court also instructed the jury that either WMATA or third-party defendant Woodson would be negligent *per se* if the jury found one or the other violated the following regulations: Regulation 2207.4 ("The driver of a vehicle intending to leave a public roadway by turning left between intersections shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard."); Regulation

basis for distinguishing § 2206.1, which it argues is too general to warrant a negligence *per se* instruction, from § 2204.2, which also incorporates a "reasonable[ness]" standard for guiding a driver's conduct.

Additionally, the two regulations to which WMATA objects in this case are similar in specificity to the traffic regulations that the D.C. Circuit determined warranted a negligence *per se* instruction in *Burns*. Among the regulations addressed in *Burns* were 18 DCMR § 2200.3, which states, in relevant part, that "no person shall drive a vehicle on a street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing;" and § 2200.5, which provides that "[t]he driver of every vehicle shall, consistent with requirements of this section, drive at an appropriate reduced speed when approaching and crossing an intersection . . . or by reason of weather . . . ." *Burns*, 114 F.3d at 223 n.4. These regulations direct a driver to be "reasonable and prudent" and to drive at "an appropriate reduced speed," which, just like the two regulations at issue in the case before the Court, direct the driver to operate a vehicle after carefully assessing the traffic situation presented.

*3. WMATA Presented No Evidence at Trial to Establish that its Bus Driver's Failure to Comply with Applicable Regulations was Excusable*

Finally, WMATA argues that "[t]he highly prejudicial nature of [the negligence *per se*] instruction was exacerbated by the fact that the instruction required the jury to find WMATA negligent if it found that WMATA violated any of these regulations, as opposed to merely providing evidence of negligence for the jury to weigh." WMATA Mem., ECF No. 70, at 7. A

2204.3 ("No person shall turn any vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway without giving an appropriate signal in the manner provided in this chapter if any other traffic may be affected by the movement."); Regulation 2205.1 ("Required stop or turn signals shall be given by using the hand and arm, by a signal lamp or lamps, or by means of a mechanical signal device, except as otherwise provided in this section."); or Regulation 2204.4 ("A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet (100 ft.) traveled by the vehicle before turning.").

jury should be instructed that the violation of a statute is merely evidence of negligence, pursuant to D.C. Standardized Civil Jury Instruction § 5.10, and not negligence as a matter of law, "[i]f a party charged with statutory or regulatory negligence produces competent evidence tending to explain or excuse his or her violation of the statutory or regulatory standard."[13] *Perkinson v. Gilbert/Robinson, Inc*., 821 F.2d 686, 692 (D.C. Cir. 1987). At trial, WMATA presented no evidence to excuse any alleged violation of traffic regulations by its employee bus driver.

According to WMATA, the bus driver testified that he assessed traffic conditions before accelerating, and that was "clearly adequate to explain any alleged violation of the regulations in issue . . . ." WMATA Reply Mot. New Trial, ECF No. 74, at 4. The testimony WMATA cites does not offer an excuse or explanation for violation of traffic regulations, but rather merely reflects an effort to prove that no violation occurred. In *Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686 (D.C. Cir. 1987), the defendant attempted a similar argument, asserting that "its denial that a violation [of a statute] occurred at all should be considered an explanation or excuse for the alleged violation." *Id.* at 692. The D.C. Circuit found this argument "labored," explaining that "[b]ecause an excuse or explanation can only arise if a violation did occur, a denial is obviously not the sort of 'explanation' that [rebuts a negligence *per se* charge]." *Id.*

Here, WMATA proffers an argument identical to the one rejected in *Perkinson*, and one that likewise finds no support before this Court. WMATA did not present evidence or argue that its bus driver's failure to comply with applicable traffic regulations was explainable or should otherwise be excused. On the contrary, WMATA contended that its bus driver fully complied

---

[13] *Perkinson* reiterated that D.C. law follows the approach of the Restatement (Second) of Torts (1965), which recognizes five categories of excuses that would remove a violation of a statute from the realm of negligence *per se*: (a) the violation is reasonable because of the actor's incapacity; (b) he neither knows nor should know of the occasion for compliance; (c) he is unable after reasonable diligence or care to comply; (d) he is confronted by an emergency not due to his own misconduct; (e) compliance would involve a greater risk of harm to the actor or to others. 821 F.2d at 692 n.9 (citing Restatement (Second) of Torts § 288A (1965)).

with the regulations. The jury, however, found otherwise. *See Bauman v. Sragow*, 308 A.2d 243, 244 (D.C. 1973) ("Violation of traffic regulations may, of course, constitute negligence per se. Whether the applicable regulations were violated, however, and whether their violation was the proximate cause of the collision, are questions of fact for the jury unless reasonable persons could draw but one conclusion from the evidence.").

Given the absence of evidence that would excuse or explain the bus driver's violation of the traffic regulations, WMATA's argument that the Court should have instructed the jury that violation of 18 DCMR §§ 2213.4 and 2206.1 was only evidence of negligence, in accordance with D.C. Standardized Civil Jury Instruction § 5.10, is wrong. As the plaintiff notes, "WMATA ignores D.C. law, cited in the comment to Jury Instruction 5.10 itself, holding that 'it is reversible error to give only an evidence of negligence instruction and not the negligence per se instruction . . . where the defendant has offered no excuse or explanation for his violation of the statute.'" Pl.'s Opp'n Mot. New Trial, ECF No. 73, at 4-5 (quoting 1-5 Civ. Jury Instr. D.C. § 5.10 (2011), which cites *Perkinson*, 821 F.2d at 692).

**C. Any Alleged Error in Instructing the Jury Regarding the Two Traffic Regulations was Harmless**

Even assuming, *arguendo*, that violations of 18 DCMR §§ 2213.4 or 2206.1 do not constitute negligence *per se*, WMATA's motion for new trial must nonetheless be denied. "It is well established that challenges to jury instructions are subject to the harmless error rule." *Bell Helicopter Textron*, 999 F.2d at 559. Pursuant to Federal Rule of Civil Procedure 61, reversal is appropriate only if "the trial court's error could have affected the substantial rights of the parties." *Id.*; FED. R. CIV. P. 61 ("Unless justice requires otherwise, no error . . . by the court . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must

disregard all errors and defects that do not affect any party's substantial rights."). This means that the error "must have been prejudicial: It must have affected the outcome of the proceedings." *Evans v. Wash. Metro. Area Transit Auth*., No. 08-cv-1629, 2011 WL 4599788, at *3 (D.D.C. Oct. 6, 2011) (quoting *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 168 (D.C. Cir. 2007)).

Although the verdict sheet did not indicate the precise basis for the jury's conclusion that WMATA was negligent, there is no evidence that inclusion of the two challenged regulations in the negligence *per se* instruction affected the outcome of the case. WMATA argues that the jury should have been instructed that violation of 18 DCMR §§ 2213.4 or 2206.1 would be evidence of negligence, rather than negligence as a matter of law. Yet, even if the jury had been instructed as WMATA now suggests, and provided with both a negligence and negligence *per se* instruction that referenced different traffic regulations, the jury still would have been required to find the same predicate facts in order to reach a finding of negligence or of negligence *per se*. In other words, even if the jury considered the two challenged regulations as evidence of negligence they would most likely have reached the same verdict.

The jury was presented with significant evidence that supported a finding that WMATA's bus driver was negligent. The plaintiff and eyewitness Patricia Shelton both testified that the bus driver was distracted by attractive women at the bus stop and did not assess traffic conditions before moving forward. Trial Tr. (Rough), Sept. 22, 2011 AM, at 9-16 (testimony of Patricia Shelton); *id.* at 71 (testimony of plaintiff Margaretta Sibert-Dean). Moreover, five eyewitnesses testified that Ms. Woodson's vehicle was in front of the bus when the bus began accelerating. Trial Tr. (Rough), Sept. 22, 2011 (testimony of Patricia Shelton and plaintiff Margaretta Sibert-Dean); Trial Tr. (Rough), Sept. 23, 2011 (testimony of Norma Jean Woodson); Trial Tr.

(Rough), Sept. 27, 2011 (testimony of Rochelle Lewis and Michael Cooper). Indeed, the WMATA bus driver was the only witness who could not recall seeing Ms. Woodson's vehicle in front of the bus before the accident. Trial Tr. (Rough), Sept. 27, 2011, at 66. This evidence "clearly supports the jury's conclusion that WMATA's bus driver was negligent regardless of whether it was the result of negligence *per se* or negligence." Pl.'s Opp'n Mot. New Trial, ECF No. 73, at 11.

## IV. CONCLUSION

The Court concludes that the jury in this case was properly instructed, in accordance with D.C. Standardized Civil Jury Instruction § 5.09, that an unexplained violation of 18 DCMR §§ 2213.4 or 2206.1 would constitute negligence *per se*. Furthermore, even if violation of these two regulations should have been presented to the jury merely as evidence of negligence, any error in the instructions as given was harmless. Accordingly, WMATA's motion for a new trial is denied. An Order consistent with this Memorandum Opinion will be entered.

**DATED: DECEMBER 4, 2011**

/s/ Beryl A. Howell
BERYL A. HOWELL
United States District Judge